UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RENEE ARQUILLA-ROMEO, | ) CASE NO. 4:12-cv-01779 ) ) |
| Plaintiff, | ) JUDGE JOHN R. ADAMS ) |
| v. | ) ORDER ) |
| METROPOLITAN LIFE INSURANCE COMPANY, | ) ) ) ) |
| Defendants. | |

This matter is before the Court on the parties cross motions for judgment on the administrative record, Documents 17 and 18, and Defendant Metropolitan Life Insurance Company's motion for summary judgment on its counter-claim for repayment of overpayment of benefits to Plaintiff Arquilla-Romeo, Document 18. The motions are fully briefed and ripe for review.

I. Introduction

This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 *et seq,* and concerns Defendant Metropolitan Life Insurance Company's ("MetLife") termination of Plaintiff Renee Arquilla-Romeo's ("Arquilla-Romeo") long term disability ("LTD") benefits she had been receiving under the Siemens Corporation Group Insurance and Flexible Benefits Program (the "Plan") sponsored by her employer, Siemens Corporation ("Siemens"), and funded by a group insurance policy issued to Siemens by MetLife.

During the administrative process, MetLife determined that Arquilla-Romeo's disability stems from a "neuromusculoskeletal and soft tissue disorder" thereby limiting her to a 24 month

period for benefits. Arquilla-Romeo argues that her disability does not include a "soft tissue disorder" and, therefore, the 24 month limitation period is not triggered.

    II. Standard of Review

In order to determine the standard of review herein, this Court must first decide whether the Plan vests discretionary authority in MetLife. On this issue, the parties disagree. The Sixth Circuit, in *Frazier v. Life Ins. Co. of North America*, recently articulated the standard of review that a district court applies after the administrator of a benefit plan denies benefits:

> Under ERISA, a denial of benefits "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Majestic Star Casino*, 581 F.3d at 364–65. If the administrator or fiduciary can show it has such discretionary authority, a benefits denial is reviewed under the arbitrary and capricious standard. *Haus* [*v. Bechtel Jacobs Co*., 491 F.3d 557, 561–62 (6th Cir. 2007)] (internal quotation marks omitted). Although "magic words" are not required, this Court "has consistently required that a plan contain a clear grant of discretion" to the administrator or fiduciary before applying the deferential arbitrary and capricious standard. *Perez v. Aetna Life Ins. Co*., 150 F.3d 550, 555 (6th Cir. 1998) (internal quotation marks omitted, emphasis in original). A plan is not required to, but "may expressly provide for procedures for allocating fiduciary responsibilities." 29 U.S.C. § 1105(c)(1).

__ F.3d __, 2013 WL 3968766, *4 (6th Cir. 2013).

Arquilla-Romeo argues that a de novo standard of review applies. Arquilla-Romeo acknowledges that the ERISA statement attached to the Plan attempts to give MetLife discretion over the interpretation of the Plan; she argues, however, that the ERISA attachment is not a part of the terms of the Plan and, therefore, does not grant clear discretion to MetLife. There are numerous district courts that have held that a grant of discretion not contained in the plan certificate itself is invalid to invoke an arbitrary and capricious standard of review. MetLife disagrees and argues that the ERISA attachment is part of the Plan.

This Court need not reach a decision as to whether the ERISA attachment to the Plan certificate confers discretion to MetLife. The certificate of insurance, at page ii, expressly provides: "MetLife in its discretion has authority to interpret the terms, conditions, and provisions of the entire contract. This includes the Group Policy, Certificate, and any Amendments." Moreover, the certificate of insurance provides that, to receive benefits under the Plan, a participant must provide supporting documentation "subject to [MetLife's] satisfaction…" MetLife has properly argued that the Sixth Circuit has held that this language invokes the arbitrary and capricious standard of review. "*Yeager v. Reliance Std. Life Ins.*, 88 F. 3d 376, 381 (6th Cir. 1996) (finding that language stating that claimant must submit "satisfactory proof of Total Disability to us" conferred discretion); *Perez v. Aetna Life Ins. Co.*, 150 F. 3d 550, 556 (6th Cir. 1998) (*en banc*) (language stating that the insurer "shall have the right to require as part of the proof of claim satisfactory evidence" conferred discretion); *Miller v. Metropolitan Life Ins. Co.*, 925 F. 2d 979, 983 (6th Cir. 1991) (language requiring "medical evidence satisfactory to the Insurance Company" conferred discretion)." Doc.20 at 2.  Accordingly, this Court must review MetLife's termination of Arquilla-Romeo's LTD under the arbitrary and capricious standard.

"[T]he arbitrary or capricious standard is the least demanding form of judicial review of administrative action and when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989). A decision to terminate benefits is not arbitrary and capricious if it was the product of deliberate principled decision making and based on substantial evidence. *Killian v. Healthsource Provident*

*Administrators, Inc.*, 152 F.3d 514, 520 (6th Cir. 2005). A plan administrator's[1] inherent conflict of interest by virtue of being both sole decision maker and sole payor should also be taken into account. *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 311 (6th Cir. 2010); *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 292 (6th Cir. 2005) (citations omitted).

In determining whether a plan administrator's decision to deny LTD benefits was arbitrary and capricious, a court may not substitute its own judgment for that of the administrator. *Brown v. National City Corp.*, 974 F. Supp. 1037, 1041 (W.D. Ky. 1997), *aff'd*., 166 F. 3d 1213 (6th Cir. 1998). Even if there is sufficient evidence to support a finding of disability, "[i]f there is a reasonable explanation for the administrator's decision denying benefits…, then the decision is neither arbitrary nor capricious." *Schwalm*, 626 F.3d at 308.

The plan administrator breaches its discretion when the decision is made in bad faith or otherwise contrary to law. *See Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988), *cert. denied*, 488 U.S. 826 (1988) ("A plan administrator has broad discretion in deciding questions of coverage and eligibility for benefits. This court has held repeatedly that the appropriate determination in reviewing the decision of a plan administrator with respect to a claim for benefits is whether the decision was arbitrary, capricious, made in bad faith or otherwise contrary to law."), *citing Adcock v. Firestone Tire and Rubber Co.*, 822 F.2d 623, 626 (6th Cir. 1987) ("In reviewing the decisions of plan administrators under ERISA, the appropriate standard of review is whether the decision was arbitrary, capricious, or in bad faith.").

III. MetLife unreasonably interpreted the language of the limitations clause.

The issue before the Court is whether MetLife acted arbitrarily and capriciously when it concluded that Arquilla-Romeo's LTD benefits were limited to 24 months.

---

[1] MetLife is the claims administrator for LTD benefits under the Plan. The Court uses the term "plan administrator" throughout the opinion because the review is the same under either term.

The MetLife disability policy issued to Arquilla-Romeo's employer, Siemen's, contains in relevant part the following definitions:

> "Disabled" or "Disability" means that, due to sickness, pregnancy or accidental injury, you are receiving Appropriate Care and Treatment from a Doctor on a continuing basis; and
>
> 1. during your Elimination Period and the next 24 month period, you are unable to earn more than 80% of your Pre-disability Earnings or Indexed Pre-disability Earnings at your Own Occupation for any employer in your Local Economy; or
>
> 2. after the 24 month period, you are unable to earn more than 80% of your Indexed Predisability Earnings from any employer in your Local Economy at any gainful occupation for which you are reasonably qualified taking into account your training, education, experience and Pre-disability earnings.

It is undisputed that Arquilla-Romeo initially met the definition of Disabled as defined by the MetLife policy and received benefits for the first 24 months following that determination. At 24 months, however, MetLife applied the following limitations clause:

> Limitation for Disabilities Due to Particular Conditions Monthly Benefits are limited to 24 months during your lifetime if you are Disabled due to a:
>
> . . .
>
> 2. Neuromusculoskeletal and soft tissue disorder including, but not limited to, any disease or disorder of the spine or extremities and their surrounding soft tissue; including sprains and strains of joints and adjacent muscles, unless the Disability has objective evidence of:
>
> > a. seropositive arthritis;
> > b. spinal tumors, malignancy, or vascular malformations;
> > c. radiculopathies;
> > d. myelopathies;
> > e. traumatic spinal cord necrosis; or
> > f. musculopathies.

Applying the above definition, MetLife found that Arquilla-Romeo's Disability is a "neuromusculoskeletal and soft tissue disorder" and that Arquilla-Romeo had not presented

sufficient objective evidence that her Disability falls within one of the exceptions to the limitation.  Specifically, MetLife argues:

> [Arquilla-Romeo]'s entire case, therefore, is based on her bald contention that the alleged non-union of the previously attempted fusion of her L4 and L5 vertebrae is not a "neuromusculoskeletal and soft tissue disorder" and therefore not subject to the 24-month benefits limitation.
> The key to determining this case is to look at what the Plan provides. While Plaintiff contends that a non-union is not a neuromusculoskeletal or soft tissue disorder "as contemplated by the Met Life policy" (Doc. 17, p 7), the Plan expressly provides that benefits are limited to 24 months "if you are Disabled due to a: …"Neuromusculoskeletal and soft tissue disorder **including, but not limited to, any disease or disorder of the spine** or extremities and their surrounding soft tissue..."

(Doc. 20 at 4) (emphasis provided by MetLife).

Although parties are free to define the terms of the Plan in any way they want, when interpreting the terms, MetLife cannot simply ignore the language it chose. Given the administrative decision and the briefing in this matter, it appears that MetLife may have somehow intended that this limitation apply to either neuromusculoskeletal or soft tissue disorders.  However, MetLife did not draft a limitation that accomplished this result.  Instead, the limitations clause specifically states "neuromusculoskeletal **and** soft tissue disorder including, but not limited to, any disease or disorder of the spine or extremities **and** their surrounding soft tissue..." (Emphasis added). MetLife chose to use a conjunctive in the Plan and must, therefore, give that conjunctive meaning.

In its briefing, MetLife has essentially tried to carve out the 24 month limitation and apply it to **any** disorder of the spine: "The 24 month limitation applies not just to soft tissue disorders, but to 'neuromusculoskeletal <u>and</u> soft tissue disorders' [(emphasis provided by MetLife)], defined to include 'any disease or disorder of the spine.'" MetLife's justification for grouping all disorders of the spine into the limitation does not find **any** support in the language

of the Plan. In fact, to reach this result, MetLife, in its own argument, was required to entirely omit the conjunctive language that follows its quoted text: "or extremities **and** their surrounding soft tissue..." (Emphasis added).

Throughout its briefing, MetLife consistently ignores one of the most basic premises of contract interpretation, that is that the word "and" and the word "or" are not interchangeable. *Shifrin v. Forest City Enterprises*, 64 Ohio St.3d 635 (Ohio 1992) ("Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.") Moreover, MetLife also ignores that it, along with this Court, must give meaning to *every* word in the contract and may not engage in an interpretation that renders terms meaningless. *Sherwin-Williams Co. v. Travelers Cas. & Sur. Co.*, 2003 WL 22671621, at *4 (Ohio Ct. App. Nov. 13, 2003). As such, even if the Court were to somehow view the phrase "neuromusculoskeletal and soft tissue disorder" as a single term, the conjunction "and" must be given meaning. The only reasonable interpretation of this phrase is to conclude that there are two parts: first, that the disorder affects the neuromusculoskeletal system; and second, that the disorder affects the soft tissues. MetLife could have written the phrase with an "and/or", but it did not; meaning must be given to the language chosen by MetLife. MetLife's interpretation is unreasonable in that it wholly ignores the language chosen by it and in fact seeks to replace that language with words not contained in the plan. Accordingly, MetLife breached its discretion by unreasonably applying the terms of the Plan to its evaluation of Arquilla-Romeo's entitlement to disability benefits.

IV. Remedy

Because the Court has determined that MetLife's decision to deny Arquilla-Romeo LTD benefits was arbitrary and capricious, the Court must now determine the proper remedy in this case: retroactive reinstatement of benefits or remand to the administrator for a renewed evaluation of Arquilla-Romeo's case. *Shelby Cnty. Health Care Corp. v. Majestic Star Casino, LLC*, 581 F.3d 355, 373 (6th Cir. 2009) (citation omitted).

In *Elliott v. Metro. Life Ins. Co.*, the Sixth Circuit stated that remand to the plan administrator is the appropriate remedy when the "problem is with the integrity of [the administrator's] decision making process," rather than "that [a claimant] was denied benefits to which he was clearly entitled." 473 F.3d 613, 621 (6th Cir. 2006) (citation omitted). "An immediate award of benefits is generally not appropriate unless a claimant's disability "'is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground.'" *Neubert v. Life Ins. Co. of North America*, 2012 WL 776992, *21 (N.D. Ohio 2012) *quoting Daft v Advest, Inc*., 658 F. 3d 583, 595 (6th Cir. 2011).

Based on a review of the administrative record and the parties' arguments, it is unclear to this Court whether a proper reading of the Plan using the conjunctive would alter the result of MetLife's decision. The parties argue about whether their respective physicians agree or disagree as to the cause of Arquilla-Romeo's Disability and pain, whether Arquilla-Romeo's Disability is a neuromusculoskeletal disorder or a neuromusculoskeletal and soft tissue disorder, or whether objective evidence was presented.  At the heart of each of these issues, however, is whether the 24 month limitation applies. Because it is unclear, the Court finds that the appropriate remedy is to remand the matter to the Plan administrator for a proper application of the deference granted by the Plan.

V. MetLife is entitled to repayment of its overpayment of benefits to Arquilla-Romeo.

MetLife also moved for summary judgment on its counterclaim for repayment of the $24,235.20 overpayment of benefits to Arquilla-Romeo. On December 28, 2011, Plaintiff was awarded Social Security Disability Income Benefits ("SSDIB") retroactive to June 1, 2010. Plaintiff received a lump sum check in the sum of $28,258.00 from Social Security for the past due SSDIB. Because Plaintiff's LTD benefits under the Plan were not terminated until June 15, 2011, MetLife seeks reimbursement of the overpayments of Arquilla-Romeo's LTD benefits from June 1, 2010 through June 14, 2011 in the total sum of $24,235.20.

"A plan fiduciary is permitted to bring a claim for equitable relief to enforce the terms of the plan." *Hall v. Liberty Life Assur. Co. Of Boston*, 595 F.3d 270, 274 (6th Cir. 2010) *citing* 29 U.S.C. § 1132(a)(3). The *Hall* court found that a district court may place an equitable lien on "a specifically identifiable fund (the overpayments themselves) within [the beneficiary's] general assets, with the Plan entitled to a particular share (all overpayments due to her receipt of Social Security benefits, not to exceed the amount of benefits paid)." *Id.* at 275.

Under the terms of the Plan, a participant's monthly LTD benefit is reduced by "Other Income Benefits" listed in the Plan. Other Income Benefits include benefits received under the federal Social Security Act. MetLife seeks to recover from a specific fund: the overpayments it made as a result of Arquilla-Romeo's award of SSDIB. Arquilla-Romeo argues that she has used all of the overpaid funds received for payment of necessary living expenses. There is, however, no tracing requirement applicable to equitable liens by agreement. *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356, 365 (2006). MetLife is thus entitled to bring this action under 29 U.S.C. § 1132(a)(3)(B).

This Court concludes that MetLife is entitled to an award of overpayment based upon Arquilla-Romeo's receipt of SSDIB. Arquilla-Romeo, however, validly argues that MetLife's requested amount does not account for attorney fees that likely would have been deducted from her lump sum payment. Accordingly the parties are given 14 days to file simultaneous briefs on what effect, if any, the payment of those fees should have on the ultimate award for reimbursement.

VI. Conclusion

For the reasons set forth above, Plaintiff Renee Arquilla-Romeo's motion for judgment on the administrative record is GRANTED in part; Defendant Metropolitan Life Insurance Company's motion for judgment on the administrative record is DENIED; and Defendant's motion for summary judgment is GRANTED. This case is REMANDED to MetLife for a "full and fair review" of its decision to deny benefits; MetLife is awarded judgment against Arquilla-Romeo for overpayment of her LTD benefits.

IT IS SO ORDERED.

 September 27, 2013         /s/ Judge John R. Adams
Date                        JUDGE JOHN R. ADAMS
                            UNITED STATES DISTRICT COURT